UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

T. PARK CENTRAL, LLC, O. PARK
CENTRAL, LLC, NEW YORK URBAN
OWNERSHIP MANAGEMENT, LLC,

                Petitioners,

      -against-

BLUEGREEN VACATIONS UNLIMITED,
INC.,

            Respondent.

21 CV 4346 (LAP)

OPINION & ORDER

---

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is Petitioners T. Park Central, LLC,

O. Park Central, LLC, and New York Urban Ownership Management,

LLC (collectively, "NY Urban" or "Petitioners") petition to

compel arbitration against Bluegreen Vacations Unlimited, Inc.

("Bluegreen" or "Respondent").  (See Petition to Compel

Arbitration ["Pet."], dated May 13, 2021 [dkt. no. 1].)[1]

The issue before the Court is straightforward:  Is a

dispute over the existence, enforceability, and scope of a

purported agreement to settle claims under an existing agreement

subject to the existing agreement's broad arbitration clause?

---

[1] All citations to docket entries herein refer to 21-cv-4346
unless otherwise specified.

For the reasons that follow, the answer is yes.  Accordingly, the petition to compel arbitration is GRANTED.

I.   FACTUAL BACKGROUND[2]

Petitioners are New York limited liability companies that collectively manage and operate The Manhattan Club, a timeshare property in New York City.  (Pet. ¶¶ 6-7; Respondent's Answer to Pet. and Counterclaims ["Answer" or "Counterclaims"], dated June 1, 2021 [dkt. no. 10] ¶¶ 6-7.)  Respondent is a Florida corporation that owns and manages timeshare properties throughout the United States and Caribbean.  (Pet. ¶ 8; Answer ¶ 8.)

On March 15, 2018, NY Urban and Bluegreen entered into an Agreement for Purchase and Sale of Assets (the "PSA").  (Pet. ¶¶ 1, 14; Answer ¶ 14; Counterclaims ¶ 27; Ex. 2.)[3]  Under the 2018 Agreement, Respondent agreed to purchase certain timeshare inventory in The Manhattan Club from Petitioners over a period of years and, eventually, to assume management responsibilities. (Pet. ¶ 14; Answer ¶ 14; Counterclaims ¶ 38; Petitioner's Reply Memorandum of Law ["Reply"], dated June 8, 2021 [dkt. no. 14] at 1; Ex. 2.)

---

[2] Unless otherwise stated, the facts summarized herein are undisputed.

[3] References to exhibits are to the exhibits attached to Bluegreen's answer and counterclaims.  (See dkt. no. 10.)

2

Section 12.3 of the PSA (the "Arbitration Clause")

provides:

> If the Parties are unable to resolve any dispute, claim
> or controversy hereunder after sixty (60) days of good
> faith negotiations between them . . . , the Parties agree
> for themselves and each of their respective
> representatives that any dispute, claim or controversy
> (collectively, "Dispute") arising out of this Agreement
> . . . shall be referred to, and resolved by, binding
> arbitration under the Commercial Arbitration Rules of
> the American Arbitration Association . . . , which rules
> are deemed to be incorporated by reference into this
> Section 12.3. . . . The place of Arbitration shall be
> New York, New York. The arbitrator shall have the
> authority to award only actual damages. . . . The
> provisions of this Section 12.3 will survive the
> expiration or termination of this Agreement.

(Ex. 2 at 69-70.)

After signing the PSA, various disputes arose between the

parties. (Pet. ¶¶ 17-22; Answer ¶ 18; Counterclaims ¶¶ 3, 5;

see also Exs. 3-4.) These disputes ultimately led to

Bluegreen's November 21, 2019 notice of termination of the PSA.

(Pet. ¶ 18; Answer ¶ 18; Ex. 5.) Soon after, on November 25,

2019, NY Urban provided notice to Bluegreen that it was

terminating the PSA. (Pet. ¶ 19; Counterclaims ¶ 46; Ex. 6.)

The next day, on November 26, 2019, NY Urban responded to

Bluegreen's November 21 termination notice. (Counterclaims

¶¶ 48-51; Ex. 7.) NY Urban first provided reasons why Bluegreen

did not properly terminate the 2018 Agreement, then provided

reasons why its November 26 termination was proper, and finally

3

set forth a "path forward". (Ex. 7 at 4.). The path forward

proposed by NY Urban was, in relevant part, as follows:

> Now that NY Urban has properly terminated the PSA in light of Bluegreen's bad faith, NY Urban hereby demands that Bluegreen immediately resign its positions on The Manhattan Club Timeshare Association, Inc.'s Board of Directors (the "Board") and permit NY Urban to enforce its rights under the Security Instruments. If Bluegreen refuses to resign its positions on the Board, and NY Urban has reason to believe that the Board intends to take action that will alter the status quo with respect to the management of The Manhattan Club, please be advised that NY Urban will seek emergency injunctive relief to prevent such action.

> Furthermore, if Bluegreen prefers to fight over which Party properly terminated the PSA, then consider this letter as notice that NY Urban is, as of today, commencing the 60-day period of good-faith negotiations pursuant to Section 12.3 of the PSA. Please be further advised that if NY Urban is required to proceed to arbitration with respect to the issue of the PSA's termination, then NY Urban will seek its actual damages for Bluegreen's breaches of the PSA and tortious conduct.

> . . .

> NY Urban regrets that Bluegreen determined not to follow through with its obligations under the PSA, and that rather than act in good-faith as NY Urban's contractual partner, Bluegreen decided to "blow up" the PSA on pretextual grounds. Alas, now that NY Urban has properly terminated the PSA, Bluegreen must immediately resign its positions from the Board and permit NY Urban to enforce its rights under the Security Instruments. If not, we will try our hands yet again at good-faith negotiations—this time over which Party properly terminated the PSA—although we expect that will only lead to further arbitration and/or litigation in which NY Urban's damages claims will properly be in play. Please advise us no later than November 29, 2019, how you wish to proceed.

> Please note that this letter constitutes an offer to
> compromise and in no way serves to waive—and, indeed, NY
> Urban expressly reserves—all of its legal and equitable
> rights under the PSA and applicable law, including the
> protections afforded by NY CPLR § 4547 and/or any other
> similar rule or doctrine.

(Ex. 7 at 4-6.)

Bluegreen construed the November 26 letter to be an offer. By letter dated November 29, Bluegreen purported to "accept[]" the offer, stating that it would "circulate draft documents memorializing the parties' settlement agreement" the following week. (Ex. 8 at 2.) According to NY Urban, on December 4, 2019, Bluegreen circulated a draft settlement agreement containing a broad general release, which NY Urban did not sign. (Reply at 5.) By letter dated December 12, 2019, Bluegreen reiterated its understanding that, by virtue of the November 26 and 29 letters, the parties had entered into an enforceable settlement agreement, including a "general release" by NY Urban. (Ex. 9.) Bluegreen further represented that it would "honor the settlement agreement." (Id. at 4.) NY Urban responded by letter on December 17, 2019, stating that there was no meeting of the minds and thus no enforceable settlement agreement between the parties, and that NY Urban did not offer or agree to a "general release". (Ex. 10.)

II.  PROCEDURAL BACKGROUND

On April 2, 2021, NY Urban commenced an arbitration against Bluegreen with the American Arbitration Association (AAA), pursuant to Section 12.3 of the PSA.  (Pet. ¶ 20; Answer ¶ 20.)  Bluegreen filed its answer with the AAA on April 30, 2021.  (Pet. ¶ 21; Answer ¶ 21.)

On May 5, 2021, Bluegreen filed a motion before this Court for leave to file under seal a complaint against NY Urban.  See Bluegreen Vacations Unlimited, Inc. v. T. Park Central, LLC, No. 21-mc-427 (Dkt. no. 1) (S.D.N.Y. May 5, 2021).  The complaint alleges that the November 26 and 29 letters formed an enforceable settlement agreement; that as part of that settlement agreement, "New York Urban compromised away all claims that Bluegreen Vacations breached or improperly terminated the PSA, along with any associated tort claims and claims for damages;" that by instituting arbitration, "asserting the very claims it had compromised," NY Urban "has indicated either that it does not believe that a settlement agreement exists or that it will not honor the settlement agreement;" and that Bluegreen is therefore entitled to damages and a declaratory judgment that the parties entered into a "valid and binding settlement agreement."  (Dkt. no. 1-3 in 21-mc-427 (Complaint) ¶¶ 65-77.)

On May 15, 2021, NY Urban filed the instant petition to compel arbitration.  (Dkt. no. 1.)  This petition is a

continuation of the parties' dispute over whether the November
26 and 29 letters formed an enforceable agreement to settle
their disputes arising out of the PSA and, if so, the terms and
scope of that agreement.  NY Urban asks the Court to "order[]
Respondent to arbitrate all disputes related to the PSA before
the AAA . . . , including the proceedings Respondent recently
filed in this Court captioned <u>Bluegreen Vacations Unlimited,
Inc. v. T. Park Central, LLC et al.</u>, 1:21-mc00427".  (Pet. at
9.)

On June 1, 2021, Respondent filed an answer and
counterclaims as well as a memorandum of law in opposition to
the petition to compel arbitration.  (<u>See</u> dkt. nos. 10-11.)
Petitioners filed a reply memorandum of law in support of its
petition on June 8, 2021.  (<u>See</u> Rep.)  On June 21, 2021, the
Court adjourned the deadline for Petitioners to respond to
Respondent's counterclaims until after a ruling on the motion to
compel arbitration.  (Dkt. no. 16.)

III. <u>LEGAL STANDARD</u>

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 <u>et seq.</u>,
"requires courts to enforce privately negotiated agreements to
arbitrate . . . in accordance with their terms."  <u>Volt Info.
Scis., Inc. v. Bd. of Tr. of Leland Stanford Junior Univ.</u>, 489
U.S. 468, 478 (1989).  The statute limits the Court's role in
adjudicating petitions to "determining two issues: i) whether a

valid agreement or obligation to arbitrate exists, and ii) whether one party to the agreement has failed, neglected or refused to arbitrate." LAIF X SPRL v. Axtel, S.A. de C.V., 390 F.3d 194, 198 (2d Cir. 2004) (citation omitted); see also In re Am. Exp. Fin. Advisors Sec. Litig., 672 F.3d 113, 128 (2d Cir. 2011).  If the Court finds that these requirements are met, it must issue "an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

Petitions to compel arbitration under the FAA are "made and heard in the manner provided by law for the making and hearing of motions." ISC Holding AG v. Nobel Biocare Fin. AG, 688 F.3d 98, 112 (2d Cir. 2012) (quoting 9 U.S.C. § 6).  When evaluating a petition to compel, the Court "applies a standard similar to that applicable for a motion for summary judgment." Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003) (citations omitted); see also Schnabel v. Trilegiant Corp., 697 F.3d 110, 113 (2d Cir. 2012).  Thus, "[a] motion to compel arbitration may be granted 'when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that movant is entitled to judgment as a matter of law.'" Patterson v. Raymours Furniture Co., 96 F. Supp. 3d 71, 75 (S.D.N.Y. 2015)

(quoting Thomas v. Pub. Storage, Inc., 957 F. Supp. 2d 496, 499
(S.D.N.Y. 2013)).

"The question whether the parties agreed to arbitrate is
governed by state law principles regarding contract formation."
Patterson, 96 F. Supp. 3d at 76 (citing First Options of
Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)).  Under New
York law, the party seeking arbitration bears the burden of
proving, by a preponderance of the evidence, the existence and
validity of an arbitration agreement.  Ruiz v. New Avon LLC, No.
18 Civ. 9033 (VSB), 2019 WL 4601847, at *6 (S.D.N.Y. Sept. 22,
2019) (citations omitted), appeal withdrawn sub nom. Rivas v.
New Avon LLC, No. 19-3398, 2020 WL 1907545 (2d Cir. Jan. 22,
2020).

IV.  DISCUSSION

The Court first considers whether the parties have entered
into a valid agreement to arbitrate and next considers whether
the dispute at issue comes within the scope of the arbitration
clause.  For the reasons that follow, the petition to compel
arbitration is GRANTED.

A.   THE PSA CONTAINS AN ENFORCEABLE AGREEMENT TO
     ARBITRATE CLAIMS ARISING OUT OF THE PSA

"[A]rbitration is a matter of contract," Ragone v. Atl.
Video, 595 F.3d 115, 128 (2d Cir. 2010) (citation omitted), and
"a party cannot be required to submit to arbitration any dispute

9

which [it] has not agreed so to submit," id. at 126 (citation
omitted).   The parties can delegate much of the threshold
arbitrability inquiry to the arbitrator as long as the contract
"clearly and unmistakably" memorializes their intent to do so.
NASDAQ OMX Grp., Inc. v. UBS Sec., LLC, 770 F.3d 1010, 1031 (2d
Cir. 2014) (citation omitted).   But the Court must always
ascertain for itself whether the resisting party is subject to a
valid arbitration agreement, because even the broadest
arbitration clause cannot bind a party who never agreed to it.
See Sarhank Grp. v. Oracle Corp., 404 F.3d 657, 661 (2d Cir.
2005) ("As arbitrability is not arbitrable in the absence of the
parties' agreement, the district court [was] required to
determine whether [Respondent] had agreed to arbitrate.");
Zimring v. Coinmach Corp., No. 00 CIV. 8111 (LMM), 2000 WL
1855115, at *2 (S.D.N.Y. Dec. 19, 2000) (refusing to order
nonsignatory to arbitrate arbitrability despite language of
arbitration clause).

   The parties do not dispute that on March 15, 2018, they
entered into the Agreement for Purchase and Sale of Assets.
(Pet. ¶ 1; Counterclaims ¶ 27.)   Section 12.3 of that Agreement,
entitled "Arbitration", unambiguously provides that, subject to
a period of good-faith negotiations, which is not at issue here,
"any dispute, claim or controversy . . . arising out of this
Agreement . . . shall be referred to, and resolved by, binding

arbitration under Commercial Arbitration Rules of the American Arbitration Association."  (Ex. 2 at 69-70; see also Pet. ¶ 15; Counterclaims ¶ 36.)

It is, therefore, unambiguous and undisputed that under the PSA, the parties entered into a valid agreement to arbitrate "any dispute, claim or controversy" "arising out of" that agreement.  Nowhere in its pleadings or briefing does Bluegreen suggest that the PSA does not, by its terms, contain an agreement to arbitrate.  Nor does Bluegreen contest that NY Urban's April 2021 claims before the AAA arise out of the PSA. To the extent Bluegreen's papers can be understood to argue that the parties' cross-terminations[4] of the PSA rendered the arbitration clause void, that argument is rejected.  The PSA's arbitration clause expressly provides that it "will survive the expiration or termination of this Agreement."  (Ex. 2 at 70.)

For these reasons, the Court grants NY Urban's petition to the extent it seeks to compel arbitration of the claims arising out of the PSA that NY Urban initiated before the AAA in April 2021.

---

[4] For avoidance of doubt, the Court has not considered and provides no opinion as to the merits of the parties' dispute as to which party, if either, validly terminated the PSA.  Nothing in this decision shall be construed to indicate otherwise.

B.   THE PARTIES' DISPUTE OVER THE NOVEMBER 26 AND 29
     LETTERS IS SUBJECT TO THE PSA'S BROAD ARBITRATION
     CLAUSE

The only claims over which the parties seriously dispute
application of the PSA's arbitration clause relate to
Bluegreen's complaint that NY Urban breached a purported
settlement agreement[5] between the parties.

To determine whether a particular dispute falls within the
scope of an agreement's arbitration clause, courts undertake a
three-part inquiry:

> First, recognizing there is some range in the breadth of
> arbitration clauses, a court should classify the
> particular clause as either broad or narrow.  Next, if
> reviewing a narrow clause, the court must determine
> whether the dispute is over an issue that is on its face
> within the purview of the clause, or over a collateral
> issue that is somehow connected to the main agreement
> that contains the arbitration clause.  Where the
> arbitration clause is narrow, a collateral matter will
> generally be ruled beyond its purview.  Where the
> arbitration clause is broad, there arises a presumption
> of arbitrability and arbitration of even a collateral
> matter will be ordered if the claim alleged implicates
> issues of contract construction or the parties' rights
> and obligations under it.

Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.,
252 F.3d 218, 224 (2d Cir. 2001) (cleaned up).

---

[5] For avoidance of doubt, the Court has not considered and
provides no opinion as to whether an enforceable settlement
agreement was formed and, if so, the scope of any such
agreement.  Nothing in this decision shall be construed to
indicate otherwise.

"'Broad' clauses purport to refer all disputes to arbitration; 'narrow' clauses limit arbitration to specific types of disputes." Camferdam v. Ernst & Young Int'l, Inc., No. 02-CV-10100 (BSJ), 2004 WL 1124649, at *1 (S.D.N.Y. May 19, 2004) (citing McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co., 858 F.2d 825, 832 (2d Cir. 1988)). "Indeed, if the arbitration clause is broad, it is presumptively applicable to disputes involving matters going beyond the interpretation or enforcement of particular provisions of the contract which contains the arbitration clause." Boss Worldwide LLC v. Crabill, No. 19-CV-2363 (VB), 2020 WL 1243805, at *3 (S.D.N.Y. Mar. 16, 2020) (cleaned up). With broad agreements, "arbitration of even a collateral matter will be ordered if the claim alleged 'implicates issues of contract construction or the parties' rights and obligations under it.'" Serebryakov v. Golden Touch Transp. of NY, Inc., No. 12-CV-3990 (NGG) (RER), 2015 WL 1359047, at *6 (E.D.N.Y. Mar. 24, 2015) (citation omitted); accord Louis Dreyfus, 252 F.3d at 225 ("When parties use expansive language in drafting an arbitration clause, presumably they intend all issues that 'touch matters' within the main agreement to be arbitrated.").

The PSA's arbitration clause covers "any dispute, claim or controversy . . . arising out of this Agreement." (Ex. 2 at 69.) This type of "expansive language . . . suggest[s] a broad

13

arbitration clause." Louis Dreyfus, 252 F.3d at 225 (citation omitted); Marcus v. Frome, 275 F. Supp. 2d 496, 504 (S.D.N.Y. 2003) ("[A]ny dispute, controversy or claim arising out of or relating to this Agreement" is a broad arbitration clause); Vera v. Saks & Co., 218 F. Supp. 2d 490, 491, 494 (S.D.N.Y. 2002) ("Any dispute . . . arising out of or relating to this Agreement" found to be a broad arbitration clause), aff'd, 335 F.3d 109 (2d Cir. 2003); ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co., 307 F.3d 24, 26 (2d Cir. 2002) ("[A]ny dispute [that] shall arise between the parties . . . with reference to the interpretation of this Agreement or their rights with respect to any transaction involved" held to be a broad arbitration clause); see also U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd., 182 F.R.D. 97, 101 (S.D.N.Y. 1998) ("[A]ny dispute arising under this charter" is a broad arbitration clause.), aff'd, 241 F.3d 135 (2d Cir. 2001). This language thus "evidences the parties' intent to have arbitration serve as the primary recourse for disputes connected to [the PSA]." Louis Dreyfus, 252 F.3d at 225. Moreover, there is no language in the Arbitration Clause that contains any words of limitation (see Ex. 2 at 69-70), thus further establishing the broad scope of this provision and its applicability to any dispute implicating the PSA. See, e.g., Dill v. JPMorgan Chase Bank, N.A., No. 19-CV-10947 (KPF), 2020 WL 4345755, at *6

(S.D.N.Y. July 29, 2020) (finding an arbitration agreement "indisputably broad" which included language such as "any dispute relating in any way to your account or transactions will be resolved by binding arbitration" and "ALL DISPUTES, EXCEPT AS STATED BELOW, MUST BE RESOLVED BY BINDING ARBITRATION" (emphases omitted)).

NY Urban seeks to compel arbitration of the claims Bluegreen asserts in the related action Bluegreen Vacations Unlimited, Inc. v. T. Park Central, LLC, No. 21-mc-427 (S.D.N.Y. May 5, 2021) (Dkt. No. 1). (See Pet. at 9 (seeking to compel Bluegreen "to arbitrate all disputes related to the PSA before the AAA . . . , including the proceedings Respondent recently filed in this Court captioned Bluegreen Vacations Unlimited, Inc. v. T. Park Central, LLC et al., 1:21-mc00427".)). Bluegreen's claim in the related matter is essentially that the November 26 and 29 letters formed an enforceable settlement agreement and that NY Urban breached its promise in that agreement to waive "all claims that Bluegreen Vacations breached or improperly terminated the PSA, along with any associated tort claims and claims for damages" when it initiated arbitration against Bluegreen in April 2021. Bluegreen Vacations Unlimited, Inc. v. T. Park Central, LLC, No. 21-mc-427 (S.D.N.Y. May 5, 2021) (Dkt. 1-3 (Complaint) ¶¶ 65-77.)

This claim is plainly collateral to the PSA.  See Louis
Dreyfus, 252 F.3d at 228-229; see, e.g., Ferrari N. Am., Inc. v.
Ogner Motor Cars, Inc., No. 02 CIV. 7720 (SAS), 2003 WL 102839,
at *3 (S.D.N.Y. Jan. 9, 2003) (agreement settling claims under
existing agreement is collateral to the existing agreement); see
also Gould v. Japan Pulp & Paper (U.S.A.), No. 14 CIV. 7905,
2015 WL 631405, at *3-4 (S.D.N.Y. Feb. 13, 2015) (consulting
agreement is collateral to stock purchase agreement arbitration
clause).  Because the PSA's arbitration clause is broad and
because the dispute sought to be compelled is collateral to the
PSA, the dispute is presumptively arbitrable.  The Court must
therefore "test the 'presumption of arbitrability' associated
with a broad arbitration clause by asking whether" the
collateral matter at issue "implicate[s] issues of contract
construction or the parties' rights and obligations under it."
Louis Dreyfus, 252 F.3d at 228-229 (quoting Collins & Aikman
Prods. Co. v. Building Sys., 58 F.3d 16, 23 (2d Cir. 1995)).

     The dispute over whether a settlement agreement exists and,
if so, the scope of that agreement lies at the very heart of the
parties' "rights and obligations under" the PSA.  See Collins,
58 F.3d at 23.  Indeed, it is difficult for the Court to imagine
a dispute with a greater nexus to the parties' rights and
obligations under the PSA than this one.  If Bluegreen is
correct that the November 26 and 29 letters formed an

enforceable agreement by NY Urban "compromis[ing] away all claims that Bluegreen Vacations breached or improperly terminated the PSA," then NY Urban presumably has few, if any, remaining rights under the PSA.  (See dkt. no. 1-3 in 21-mc-427.)  And nowhere in NY Urban's November 26 letter, which Bluegreen interpreted to be an offer, did NY Urban purport to waive or otherwise supersede the PSA's arbitration clause.  (See generally Ex. 7.)  Accordingly, Bluegreen's claims implicate the rights and obligations of the parties under the PSA, and the claims are subject to the PSA's broad arbitration clause.  For these reasons, NY Urban's motion to compel arbitration of Bluegreen's claims in the related matter is granted.

V.    CONCLUSION

For the reasons set forth above, NY Urban's petition to compel arbitration (dkt. no. 1) is GRANTED.

Pursuant to Section 12.3 of the PSA, NY Urban and Bluegreen shall arbitrate their disputes, including any disputes regarding a purported agreement to settle claims related to the PSA arising from the parties' November 26 and 29 letters, before the American Arbitration Association in New York, New York.

Accordingly, Bluegreen's motion for leave to file under seal its complaint alleging breach of the purported settlement agreement in the related action Bluegreen Vacations Unlimited, Inc. v. T. Park Central, LLC, No. 21-mc-427, is DENIED.  The

17

Clerk of the Court is directed to terminate the related action at docket number 21-mc-427.

Because the parties are directed to pursue their disputes before the AAA pursuant to the PSA's arbitration clause, Bluegreen's counterclaims filed in this action (see dkt. no. 10) are moot, and NY Urban need not submit an answer to the counterclaims in this forum.

**SO ORDERED.**

Dated:      New York, New York
            December 7, 2021

_Loretta A. Preska_
LORETTA A. PRESKA
Senior United States District Judge